IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01006-GPG

ANTHONY LOLIN JIMENEZ, SR.,

      Applicant,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
RICK RAEMISCH (Exec. Dir.),
CROWLEY COUNTY CORRECTIONAL FACILITY,
MICHAEL MILLER (Warden), and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER OF DISMISSAL

---

Applicant, Anthony Lolin Jimenez, Sr., is a prisoner in the custody of the

Colorado Department of Corrections.  Mr. Jimenez initiated this action by filing *pro se* an

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1).  On

May 26, 2015, Mr. Jimenez filed an amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 7).  Mr. Jimenez is challenging the validity of his

conviction and sentence in Teller County District Court case number 00CR178.

On May 27, 2015, Magistrate Judge Gordon P. Gallagher ordered Respondents

to file a Pre-Answer Response limited to addressing the affirmative defenses of

timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant

to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those

defenses in this action.  On June 4, 2015, Respondents filed their Pre-Answer

Response (ECF No. 13) arguing that the application is untimely and that Mr. Jimenez's claims are unexhausted and procedurally barred.  On June 18, 2015, Mr. Jimenez filed his reply (ECF No. 14) to Respondents' Pre-Answer Response.

The Court must construe the amended application and other papers filed by Mr. Jimenez liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the Court will dismiss the action.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Colorado Court of Appeals described the factual and procedural background as follows:

> On August 20, 2000, defendant, Michael Easton, Nick Olan, and three other individuals began a "camping trip." Over the next few days, they smoked marijuana and drank alcohol at the campsite.  Easton testified that during the camping trip he and defendant stole from a Home Depot store twice and a Hobby Lobby store once, and burglarized a cabin, to get money to buy alcohol, marijuana, cigarettes, and "supplies."  Olan was with them during one of the Home Depot thefts, the Hobby Lobby theft, and the cabin burglary, but defendant and Easton dropped him off near his house on August 23.  By that day, defendant and Easton were the only members of the original group still camping at the campsite.

> On August 24, defendant and Easton picked up a fifteen-year-old girl, J.B., whom they did not know, on a street in Colorado Springs.  They took her to the campsite where they held her for two days.  Easton testified that both he and defendant sexually assaulted J.B., and that defendant suggested they kill J.B. because she "knew too much."  Defendant bound J.B. with duct tape, and he and Easton carried J.B. to a stream where they drowned her. Defendant and Easton then removed J.B.'s clothing and jewelry as well as the duct tape, put her body in a sleeping

bag, and drove to a small ravine near Trail Creek Road in Teller County, where they left J.B.'s body.

Late on September 8, 2000, defendant went to the Pikes Peak Mental Health Center (PPMH), in Colorado Springs. He told a counselor that he was having "visions" of a teenage girl being sexually assaulted and murdered by two men, and that he wanted her to ask the police to come get him so he could show them where the girl's body was. The counselor called the Teller County Sheriff's Office.

After a sheriff's deputy arrived at PPMH, defendant told the deputy what he had told the counselor. Defendant offered to go with the officer to find the victim's body. He, the deputy, and a sheriff's office sergeant then searched the Trail Creek Road area. Defendant directed them to several sites where they found nothing, but eventually he directed them to the victim's body. The officers then handcuffed defendant, took him into custody, and transported him to the Teller County Sheriff's Office.

Another sheriff's office sergeant and a district attorney's office investigator questioned defendant at length on September 9 and, at defendant's request, took him to a campsite where he said he and Easton had camped. At about 6:30 p.m. that day, the sergeant and the investigator arrested defendant. After they booked him into jail, they took him to a hospital to give biological samples. After defendant gave the biological samples, he directed the sergeant and the investigator to where he and Easton had "picked up" the victim.

The next day, defendant again asked to speak with the sergeant and the investigator. Defendant then related additional details about his visions and the incident.

The People charged both defendant and Easton with first degree murder, kidnapping, sexual assault, and conspiracy. The prosecution indicated that the People intended to seek the death penalty against both men. Easton entered into a plea agreement with the People, in which he agreed to plead guilty to second degree murder and second degree kidnapping and to testify truthfully in defendant's trial in exchange for a stipulated sentence of seventy-three years in the custody of the Department of

>Corrections and dismissal of all other charges.
>
>Defendant's first trial ended in a mistrial.  Before defendant's second trial, the prosecution decided not to seek the death penalty.
>
>Defendant's theory of defense at trial was that the victim had willingly gotten into the car with him, Easton, and Olan; he never participated in preventing the victim from going anywhere; he did not sexually assault her or know that Easton or Olan had done so; and although he was physically present during the events leading to the victim's death, he did not cause her death or intend to kill her.
>
>The jury in the second trial found defendant guilty of the lesser included offense of second degree murder and the lesser nonincluded offense of accessory to a crime, but was unable to reach verdicts on the kidnapping, sexual assault, and conspiracy charges.  The court sentenced defendant to forty-eight years in the custody of the Department of Corrections on the murder conviction and six years incarceration on the accessory conviction, to be served consecutively.

*People v. Jimenez*, 217 P.3d 841, 849-50 (Colo. App. 2008).  The Colorado Court of

Appeals affirmed the convictions for second degree murder and accessory on direct

appeal.  *See id.*  On October 19, 2009, the Colorado Supreme Court denied Mr.

Jimenez's petition for writ of certiorari on direct appeal.  (*See* ECF No. 13-6.)  On May

14, 2010, the trial court granted the prosecution's motion to dismiss the kidnapping,

sexual assault, and conspiracy charges.  (*See* 13-1 at 17.)

On June 9, 2010, Mr. Jimenez filed in the trial court a postconviction motion

pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See* ECF No. 13-

1 at 17.)  The trial court denied the Rule 35(c) motion and the Colorado Court of

Appeals affirmed the trial court's order.  *See People v. Jimenez*, No. 10CA1713 (Colo.

App. Mar. 22, 2012) (ECF No. 13-2).  Mr. Jimenez did not seek certiorari review in the

Colorado Supreme Court.

On April 10, 2012, Mr. Jimenez filed in the trial court a postconviction motion "To Amend or Vacate Unauthorized Sentence" (ECF No. 13-1 at 16).  On August 21, 2012, the trial court denied the motion.  (*See* ECF No. 13-1 at 15.)

Mr. Jimenez initiated this action on May 12, 2015, and he asserts three claims for relief in the amended application.  He contends in claim one that (a) his federal statutory and constitutional rights were violated by the use at his trial of confidential medical records and (b) the trial court lacked jurisdiction because the crimes were committed in a national forest.  He contends in claim two that his state and federal constitutional rights were violated because the trial judge did not take or record his oath of office as required under state law.  Mr. Jimenez's third claim in the amended application will be dismissed because the claim is unintelligible and does not set forth a clear statement of any cognizable federal constitutional violation that implicates the validity of his conviction or sentence.  Although the amended application must be construed liberally, the general rule that *pro se* pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II.  ONE-YEAR LIMITATION PERIOD

Respondents first argue that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d).  That statute provides as follows:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall

run from the latest of–

>>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

>> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In order to apply the one-year limitation period the Court initially determines the date on which the challenged conviction became final.  *See* 28 U.S.C. § 2244(d)(1)(A). Mr. Jimenez argues, however, that no valid final judgment exists to trigger the one-year limitation period because the trial judge lacked authority to enter a final judgment. According to Mr. Jimenez, the trial judge's failure to take or record his oath of office, which is the factual basis for claim two in the amended application, means the judgment of conviction is void and not merely voidable.  This argument lacks merit because

6

application of the one-year limitation period is a matter of federal law and Mr. Jimenez cannot avoid the statute of limitations by characterizing his claims as jurisdictional or asserting his conviction is void. *See Naegele v. Warden*, No. 1:13-cv-528, 2014 WL 2006797 at *7 (S.D. Ohio May 16, 2014) (unpublished) (collecting cases). Furthermore, at least with respect to the allegation that the trial judge failed to record his oath of office, Colorado courts routinely have rejected arguments challenging the jurisdiction of trial judges and others who failed to properly file signed oaths, and concluded that "even a conceded violation of [a] constitutional [oath] requirement" does "not divest an otherwise properly-appointed judge of jurisdiction to act." *People v. Stanley*, 170 P.3d 782, 794 (Colo. App. 2007). Therefore, the Court will proceed to determine the date on which Mr. Jimenez's conviction became final.

In general, a conviction becomes final following a decision by the state court of last resort on direct appeal when the United States Supreme Court denies review, or, if no petition for writ of certiorari is filed, when the time for seeking such review expires. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001). Pursuant to Rule 13.1 of the Rules of the Supreme Court of the United States, Mr. Jimenez had ninety days to seek review in the United States Supreme Court after the Colorado Supreme Court denied his petition for writ of certiorari on direct appeal on October 19, 2009, but he did not do so. Therefore, Mr. Jimenez's conviction became final when the time for filing a petition for writ of certiorari to the United States Supreme Court expired. Because the ninetieth day after October 19, 2009, was Sunday, January 17, 2010, and the next day was a federal legal holiday, the filing deadline extended two additional days until Tuesday, January 19, 2010. *See* Sup. Ct. R. 30.1.

7

Mr. Jimenez does not argue that he was prevented by unconstitutional state action from filing this action sooner and he is not asserting any constitutional rights newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.  *See* 28 U.S.C. § 2244(d)(1)(B) & (C).  Mr. Jimenez does assert that he only recently discovered the factual basis for claim two and he contends that the lack of an oath of office could not have been anticipated and was not discoverable earlier.  *See* 28 U.S.C. § 2244(d)(1)(D).  The Court is not persuaded that Mr. Jimenez could not have discovered the factual predicate for his second claim before his conviction became final.  *See Irons v. Estep*, 291 F. App'x 136, 138 (10th Cir. 2008) (concluding on similar allegations regarding oaths of office required to be filed with the Colorado Secretary of State that "lack of awareness of a claim does not necessarily mean that the claim was not discoverable").  Therefore, the Court finds that the one-year limitation period began to run when Mr Jimenez's conviction became final on January 19, 2010.

Mr. Jimenez did not initiate this action within one year after January 19, 2010. Therefore, the next question the Court must address is whether the one-year limitation period was tolled for any period of time.  Pursuant to 28 U.S.C. § 2244(d)(2), a properly filed state court postconviction motion tolls the one-year limitation period while the motion is pending.  An application for postconviction review is properly filed within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). These requirements include:

> (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing,

> such as satisfying any filing preconditions that may have
> been imposed on an abusive filer; and (4) other conditions
> precedent that the state may impose upon the filing of a
> post-conviction motion.

*Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000) (footnote omitted).

The issue of whether a state court postconviction motion is pending for the purposes of § 2244(d)(2) is a matter of federal law, but "does require some inquiry into relevant state procedural laws." *See Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000). The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). Furthermore, "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law." *Gibson*, 232 F.3d at 804.

In addition to statutory tolling under § 2244(d)(2), the one-year limitation period may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Generally, equitable tolling is appropriate if the petitioner shows both "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way" and prevented him from filing in a timely manner. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). A showing of excusable neglect is not sufficient to justify equitable tolling. *See Gibson*, 232 F.3d at 808. Furthermore, in order to demonstrate he pursued his claims diligently, the petitioner must "allege with specificity 'the steps he took to diligently pursue his federal

claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller*, 141 F.3d at 978).

As noted above, Mr. Jimenez filed a postconviction Rule 35(c) motion on June 9, 2010, and the state court proceedings relevant to that motion concluded on March 22, 2012, when the Colorado Court of Appeals affirmed the trial court's order denying the Rule 35(c) motion.  Respondents concede that the one-year limitation period was tolled pursuant to § 2244(d)(2) while the Rule 35(c) motion was pending and that the Rule 35(c) motion remained pending until the time to file a petition for writ of certiorari to the Colorado Supreme Court expired in May 2012.  Respondents further concede that the motion to amend or vacate an unauthorized sentence Mr. Jimenez filed on April 10, 2012, continued to toll the one-year limitation period pursuant to § 2244(d)(2) until the time to appeal from the denial of that motion expired.  The trial court denied the motion to amend or vacate an unauthorized sentence on August 21, 2012, and, pursuant to Rule 4(b) of the Colorado Appellate Rules, Mr. Jimenez had forty-nine days to file a notice of appeal after August 21, 2012.  The forty-ninth day after August 21, 2012, was October 9, 2012.  Therefore, the one-year limitation period was tolled pursuant to § 2244(d)(2) for the entire time from June 9, 2010, through October 9, 2012.  However, the 140 days after January 19, 2010, when Mr. Jimenez's conviction became final, and before June 9, 2010, when he filed the Rule 35(c) motion, count against the one-year limitation period.  Therefore, only 225 days (365 - 140 = 225) remained when the one-year limitation period began to run again on October 10, 2012.  Absent any further tolling, the one-year limitation period expired on May 22, 2013, which was 225 days after October 9, 2012.

The state court docketing records reveal that Mr. Jimenez submitted various filings to the trial court prior to May 22, 2013, including several motions and letters requesting public records and other documents regarding rights under international law and the Uniform Commercial Code.  (*See* ECF No. 13-1 at 15.)  Respondents contend, and the Court agrees, that the requests for public records and documents regarding rights under international law and the Uniform Commercial Code did not toll the one-year limitation period pursuant to § 2244(d)(2) because Mr. Jimenez fails to demonstrate, and there is no indication in the record before the Court, that any of these filings included a substantive claim for relief with respect to the pertinent judgment. *See, e.g., May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (finding that postconviction motions for transcripts and petitions for writs of mandamus relating to those motions do not toll the one-year limitation period pursuant to § 2244(d)(2)); *Pursley v. Estep*, 216 F. App'x 733, 734 (10th Cir. 2007) (finding that motions for appointment of counsel in postconviction proceedings pursuant to Colorado Rule 35(c) that did not state adequate factual or legal grounds for relief did not toll the one-year limitation period).  "The simple fact that [Mr. Jimenez] mailed *something* to the court is surely insufficient to trigger § 2244(d)(2)'s tolling provision."  *Sibley v. Culliver*, 377 F.3d 1196, 1200 (11th Cir. 2004).

Mr. Jimenez did file in the trial court on January 2, 2013, a verified petition for void judgment that sounds like an application for postconviction review within the meaning of § 2244(d)(2).  (See ECF No. 13-1 at 15.)  However, even assuming the verified petition for void judgment qualifies as an application for postconviction review, the petition was not properly filed and did not toll the one-year limitation period pursuant

11

to § 2244(d)(2) because the petition, which was filed more than three years after Mr.

Jimenez's direct appeal concluded on October 19, 2009, was untimely. *See* Colo. Rev.

Stat. § 16-5-402 (providing a three-year statute of limitations on postconviction attacks

on felonies of class 2 and higher). Untimely postconviction filings are not "properly filed"

within the meaning of § 2244(d)(2). *See Pace*, 544 U.S. at 417.

For the same reason, the Rule 35(a) motion Mr. Jimenez filed on July 25, 2013,

which the trial court specifically determined was untimely as a matter of state law, also

did not toll the one-year limitation period pursuant to § 2244(d)(2). Copies of the Rule

35(a) motion and the trial court's order denying that motion are attached to the

amended application. (*See* ECF No. 7 at 35-38.) In addition, the Rule 35(a) motion

filed on July 25, 2013, and any other postconviction motions Mr. Jimenez filed after May

22, 2013, also could not have tolled the one-year limitation period pursuant to §

2244(d)(2) because those motions were filed after the one-year limitation period already

had expired. *See Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) (stating that

properly filed state court postconviction motions toll the one-year limitation period only if

they are filed within the one-year limitation period). Therefore, the Court finds that this

action is barred by the one-year limitation period in the absence of some other reason

that justifies tolling.

Mr. Jimenez contends that this action should not be dismissed as untimely

because "[t]he issue of public health and possible Constitutional violations outweighs

the application of a one[-]year time bar" and that he has been diligent in pursuing relief

because he "has mailed hundreds of letters (handwritten and typed) in an attempt to

validate the claims now before this court." (ECF No. 14 at 3.) Mr. Jimenez also asserts

that he is actually innocent.  The Court will consider these arguments in the context of equitable tolling.

Mr. Jimenez bears a strong burden to show specific facts that demonstrate the extraordinary circumstances and due diligence necessary to justify equitable tolling. *See Yang*, 525 F.3d at 928.  He fails to satisfy that burden because he does not identify any extraordinary circumstance that prevented him from filing in a timely manner and his allegation that he mailed hundreds of letters does not demonstrate he pursued his claims diligently.

Mr. Jimenez's vague and conclusory allegation of actual innocence also does not justify equitable tolling.  A credible showing of actual innocence provides a gateway to consideration of an otherwise untimely claim of constitutional error as an equitable exception to the one-year limitation period in § 2244(d).  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  However, "tenable actual-innocence gateway pleas are rare." *Id.*  To be credible, a claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see McQuiggin*, 133 S. Ct. at 1936 (applying actual innocence test in *Schlup* to one-year limitation period in § 2244(d)).  The petitioner then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327; *see also McQuiggin*, 133 S. Ct. at 1924.  Although the actual innocence test does not require a showing of diligence, untimeliness "bear[s] on the credibility of evidence proffered to show actual innocence."  *McQuiggin*, 133 S. Ct. at

1935.  Thus, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown."  *Id.* at 1928.

Mr. Jimenez fails to allege any facts to support a credible claim of actual innocence under *Schlup*.  Therefore, the Court finds no basis for an equitable exception to the one-year limitation period based on actual innocence.  As a result, the action will be dismissed as untimely.

## III.  EXHAUSTION OF STATE REMEDIES AND PROCEDURAL DEFAULT

Respondents also contend that the action should be dismissed because the constitutional claims in the amended application are unexhausted and procedurally barred.  Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.  *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252

14

(10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner

to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal

quotation marks omitted), "[i]t is not enough that all the facts necessary to support the

federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

(per curiam).  A claim must be presented as a federal constitutional claim in the state

court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-

66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly."

*Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a

federal habeas corpus action bears the burden of showing he has exhausted all

available state remedies for each particular claim.  *See Miranda v. Cooper*, 967 F.2d

392, 398 (10th Cir. 1992).

Respondents concede that Mr. Jimenez on direct appeal fairly presented a claim

that the State violated 42 U.S.C. § 290dd - 290ee by accessing records of his visits to

Pikes Peak Mental Health for mental health treatment and using those records at his

trial, the factual basis for claim 1(a) in the amended application.  However, Respondents

maintain that Mr. Jimenez did not raise this claim in state court as a federal

constitutional claim and that the alleged statutory violation does not state a cognizable

claim for habeas relief.  With respect to claims 1(b) and 2 in the application,

Respondents contend that Mr. Jimenez has not fairly presented either of those claims to

the state courts as a federal constitutional claim.  Mr. Jimenez asserts in his reply to the

Pre-Answer Response that "[t]he issues within the amended application were

adjudicated by the tr[ia]l court of record and the Colorado Supreme Court who

15

consciously chose not to brief the issues or make a finding of facts in contradiction to the claims asserted." (ECF No. 14 at 2.) It appears that Mr. Jimenez is referring to a petition for extraordinary writ he filed in the trial court in September 2014 (*see* ECF No. 1-3 at 1-25), and a petition for extraordinary writ pursuant to Colorado Appellate Rule 21 he filed in the Colorado Supreme Court (*see id.* at 34-61). On October 9, 2014, the trial court entered an order in response to the petition for extraordinary writ filed in that court. (*See id.* at 26.) On February 25, 2015, the Colorado Supreme Court denied the C.A.R. 21 petition filed in that court without addressing the merits of the claims asserted. (*See id.* at 65.)

The fact that Mr. Jimenez may have presented his claims to the trial court does not demonstrate he fairly presented his claims to the Colorado Supreme Court. The fact that Mr. Jimenez filed in the Colorado Supreme Court an original petition for extraordinary writ also does not demonstrate his claims are exhausted. If a "claim has been presented [to the state's highest court] for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, . . . [r]aising the claim in such a fashion does not, for the relevant purpose, constitute fair presentation." *Castille*, 489 U.S. at 351; *see also Parkhurst v. Shillinger*, 128 F.3d 1366, 1369 (10th Cir. 1997) (state procedure that is discretionary and limited in scope does not constitute fair presentation). The Colorado Supreme Court, in its discretion, may decline to address the merits of claims asserted in an original petition for an extraordinary writ. *See* Colo App. R. 21; *see also Rogers v. Best*, 171 P.2d 769, 770 (Colo. 1946). Furthermore, relief under Rule 21 "shall be granted only when no other adequate remedy, including relief available by appeal . . ., is

available.  C.A.R. 21(a)(1).  As a result, the denial of an original petition for an

extraordinary writ by the Colorado Supreme Court does not indicate that the court has

considered the merits of the argument.  *See Bell v. Simpson*, 918 P.2d 1123, 1125 n.3

(Colo. 1996).  Because the Colorado Supreme Court denied relief without addressing

the merits of the claims asserted, the Court finds that Mr. Jimenez's claims were not

fairly presented to the Colorado Supreme Court in the Rule 21 proceeding.

The Court has examined Mr. Jimenez's state court appellate briefs and agrees

with Respondents that Mr. Jimenez has not fairly presented to the state courts the

federal constitutional claims he asserts in the amended application.  Mr. Jimenez did not

raise claims 1(b) and 2 either on direct appeal or on appeal from the denial of his Rule

35(c) motion.  With respect to claim 1(a), Mr. Jimenez did argue on direct appeal that

his mental health records were obtained and used at trial in violation of a federal statute,

but he did not argue that his federal constitutional rights were violated.  Therefore, Mr.

Jimenez has not exhausted state remedies for his federal constitutional claims in the

amended application.

Mr. Jimenez did exhaust state remedies regarding the statutory violation portion

of claim 1(a), but the statutory violation portion of claim 1(a) is not a cognizable claim for

habeas relief.  The United States Supreme Court has "recognized that a violation of

federal statutory rights ranked among the 'nonconstitutional lapses we have held not

cognizable in postconviction proceeding' unless they meet the 'fundamental defect' test"

in *Hill v. United States*, 368 U.S. 424 (1962).  *Medellin v. Dretke*, 544 U.S. 660, 664

(2005) (per curiam).  A "fundamental defect" is one "which inherently results in a

complete miscarriage of justice [or] an omission inconsistent with the rudimentary

demands of fair procedure." *Hill*, 368 U.S. at 428.

The alleged statutory violation presented in claim 1(a) regarding Mr. Jimenez's mental health records does not rise to the level of a "fundamental defect" under the test announced in *Hill*. Therefore, the statutory violation portion of claim 1(a) will be dismissed for failure to present a cognizable habeas corpus claim.

Although Mr. Jimenez has not fairly presented his federal constitutional claims to the state courts, the Court may not dismiss those claims for failure to exhaust state remedies if Mr. Jimenez no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351. Respondents contend, and the Court agrees, that Mr. Jimenez no longer has an adequate and effective state remedy available to him and that the unexhausted claims are procedurally defaulted because Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure provides, with limited exceptions not applicable to Mr. Jimenez, that the state courts must dismiss any claim that could have been presented in a prior appeal or postconviction proceeding. In addition, any attempt by Mr. Jimenez to file another postconviction Rule 35(c) motion in state court would be untimely. *See* Colo. Rev. Stat. § 16-5-402 (providing that a defendant convicted of felony other than a class 1 felony has three years to seek relief under Rule 35(c) unless he establishes good cause). Thus, it is clear that Mr. Jimenez may not return to state court to pursue his unexhausted claims.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Even

if an unexhausted claim has not actually been raised and rejected by the state courts, the claim still is subject to an anticipatory procedural default if it is clear that the claim would be rejected because of an independent and adequate state procedural rule. *See Coleman*, 501 U.S. at 735 n.1.

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural ground is adequate if it is "applied evenhandedly in the vast majority of cases." *Id.*

Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman*, 501 U.S. at 730. Mr. Jimenez's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Mr. Jimenez fails to demonstrate that Rules 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure and Colo. Rev. Stat. § 16-5-402 are not independent and adequate. In any event, the Court finds that Rules 35(c)(3)(VII) is independent because it relies on state rather than federal law. The rule also is adequate because it is applied evenhandedly by Colorado courts. *See, e.g., People v. Vondra*, 240 P.3d 493, 494-95 (Colo. App. 2010) (applying Crim P. Rules 35(c)(3)(VI) and (VII) to reject claims that were or could have been raised in a prior proceeding). Colorado's statute of limitations for collateral attacks also is an independent and adequate state procedural ground. *See Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995). Therefore, the unexhausted claims are procedurally defaulted and cannot be considered unless Mr. Jimenez

demonstrates either cause and prejudice or a fundamental miscarriage of justice.

To demonstrate cause for his procedural default, Mr. Jimenez must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). If Mr. Jimenez can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Mr. Jimenez makes no attempt to demonstrate cause and prejudice with respect to his unexhausted claims and he fails to demonstrate that a failure to consider the merits of those claims will result in a fundamental miscarriage of justice. Therefore, the unexhausted claims are procedurally barred and also will be dismissed for that reason.

## IV. CONCLUSION

In summary, the statutory violation portion of claim 1(a) and claim 3 in the amended application will be dismissed because those claims are not cognizable habeas corpus claims. The remaining claims will be dismissed as barred by the one-year limitation period in § 2244(d) and because they are unexhausted and procedurally barred. The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status

will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438

(1962).  If Applicant files a notice of appeal he also must pay the full $505 appellate

filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (ECF No. 1) and the amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 7) are denied and the action is dismissed for

the reasons stated in this order.  It is

FURTHER ORDERED that no certificate of appealability will issue because

Applicant has not made a substantial showing of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is

denied without prejudice to the filing of a motion seeking leave to proceed *in forma

pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, this  8th  day of   July  , 2015.

BY THE COURT:


 s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court